L.P. v. Cesari S.R.L. Good morning, Your Honors. May it please the Court. My name is Joel McMullin on behalf of the appellant, Cross Appellee Peju. The district court's two legal errors on summary judgment in December 2017 deprived Peju of the opportunity to defend itself against Cesari's claims of trademark infringement. These two legal errors led the district court to find preclusion on the determination of likelihood of confusion when, in fact, issue preclusion does not apply under the Supreme Court's seminal ruling in B&B Hardware. The district court's two legal errors misapprehended and misapplied the holdings of B&B. Either — excuse me — either error alone requires this Court to reverse and vacate the judgment. The first issue that we raise in our briefing, Your Honor, that I'd like to discuss with you, is that issue preclusion cannot possibly apply because the Board's 2004 procedures were fundamentally poor, cursory, or unfair. It was undisputed below, and it remains undisputed on appeal. This was a proceeding just on the application to register your mark and the opposition filed by the defendants. I'm sorry. I heard — This was a proceeding in front of the Board based solely upon your application for registration of your mark with the name Liani. Liana, yes. Liana. Excuse me. I apologize. And their objection to that registration based upon their registration of Liano. That's correct, Your Honor. And we know that to be true because the Board — There was no discussion of the usage or the markets in which your mark would be employed. Correct. Nor was any — the label that your mark was to appear with on the bottles of the wine that you were seeking to employ with regard to the mark, or the market with regard to that mark. Is that correct? That is correct, Your Honor. Yes. The only thing the Board considered — Was there any notice from the Board with regard to their intention to engage in a summary determination? There was not, Your Honor. There was no notice. And that's, in fact, why the procedures were defective. Indeed, that would be contrary to the Board's own regulations for its own operating procedures at that time, wouldn't it? That's correct. That's correct. The lack of notice was a violation of the Board's own procedures as well as Rule 12d, which, of course, compels that when matters are going to be considered beyond the pleadings, a party must receive notice. We cite the Selvatt & Sons in our briefing, which addresses this exact issue, where the that in the absence of notice — I believe the language it uses is these are ancient primaries, and they cannot be avoided for purposes of expediency or anything else. As soon as that absence of notice happens, there's no possibility of issue preclusion. Can you just list what the marketplace usage you wanted to put before the District Court that the Board did not consider? Just list some — Judge Wesley mentioned the labels. What are some of the usages that you wished to put before the District Court? Sure. And I specifically refer the Court to A308, which is the Summary Judgment Declaration in the District Court of Arianna Paggio. In that declaration, Your Honor, she talks about the distinguishing features between the marks and the wine. She talks about, for example, grape varietals. She talks about Old World versus New World wines. She talks about the differences in the logos and the labeling. She talks about the wine — the difference in the winemaking procedures. One's a dessert wine, and one is, what, breakfast wine? I wasn't sure of the difference. I think it's just a table wine, Your Honor, yes. But all of these distinctions was, had we received notice, we could have submitted to the Board. But, of course, we received no notice when that Board converted that motion for judgment on the pleadings into one for summary judgment. And typically, the Board doesn't consider those types of issues. Typically, it decides it based upon the registration itself, right? Your Honor is correct that, typically speaking, yes, matters outside the registration or the application are not considered. But they are considered sometimes. And I specifically refer the Court to INTA's briefing at pages 13 and 15, where they cite to an article by Laura Lee Ritchie, who is a former TTAB judge, that talks about the circumstances in which a likelihood of confusion analysis will actually entertain matters extrinsic to just the registration or the application. And specifically, again, this is very important, in 2004, Cesari's Liano registration was not incontestable, which means that Peydew would have had the opportunity to introduce evidence as it relates to the strength of the mark. It also, by that I mean we could have... The Liano mark is a surname, correct? Well, yes. So it's not, you wouldn't, one wouldn't refer to it as descriptive? Well, no, well, yes. Names are actually treated the same way as descriptive marks. So they have to show acquired distinctiveness. Right. And Your Honor is correct that when Liano was applied for back in, I think, 2001, an office action issued in November of that year in which the office initially rejected registration on grounds that Liano was merely a surname. That evidence we were precluded from submitting. We could have entertained that had we received notice. Additionally, and this has the added virtue of being true, Liana is a geographic region. I'm sorry, Liano is a geographic region south of Bologna in Italy. But, again, had we been afforded the opportunity to submit evidence, which we were not, these are all things that we could have explored in the board proceeding. I was going to ask, is there any significance to the fact that the board, which applies the federal rules of evidence, converted this from 12-6 to Rule 56, a summary judgment? Does that suggest that the board was doing something broader than the usual application analysis? Forgive me, Your Honor, I'm not sure I understand your question. I just was curious. I mean, usually a summary judgment motion means you're looking outside of the four corners of the pleading. You're looking at evidence. And so that's what the board did here, right? They turned it into a Rule 56 motion.  And so does that suggest that it was engaging in a broader inquiry than would be the case if it was just sticking within the four corners of the application? I understand Your Honor's question. I don't think it does, though, because it's very clear. And I specifically point to, if I can, just the board's decision makes very clear what it considers. And it was very clear that it only considered two documents, the application for registration and the registration of Liano. On page 138 of the appendix, that neither opposes pleading to a registration nor the involved application has restrictions as to the channels of trade or purchases. That's right. That's right. And so it's two documents that were only looked at. Yeah. I just didn't understand why that needs to be a Rule 56 then. Isn't that effectively the pleadings? I can't speak to the mechanics behind it. I don't know what the board was thinking. I understand Your Honor's question. I just don't have a response to it.  I just was asking you to explore whether there was something that should be read into it, and your answer is no. Yes. That's correct. Can I just ask you, one of the arguments they made in their briefs was that B&B hardware somehow overruled our decisions in Jim Bean and Levi. Can you just address that? Yeah. And I think the best way to address them is the preeminent trademark scholar in this country, Professor Tom McCarthy, has indicated that the standard – first of all, that the cases survive. They certainly were not specifically referenced in B&B, nor do I think they were abrogated. But he specifically notes that the holdings in Levi and Jim Bean, and at their essence, what am I talking about? I'm talking about – and I think Levi uses the language in a meaningful way, meaning marketplace usage needs to be evaluated, needs to be looked at in a meaningful way. And, again, Professor McCarthy said that those two cases, and I certainly agree with him, remain alive and well after B&B hardware. All right. And even since then, we have applied Levi, right? Since B&B hardware? Yeah. Yes. Yes. So what are you asking us to do? So you're – I mean, obviously, you're asking us to vacate and remand. But so what will this play out like? Is it just a whole new trial, a whole new summary judgment motion? Is it discovery? What? Right. The way that we envision it, Your Honor, is that, yes, what we call page 1 in our briefing needs to be vacated. I see my red light is on, but allow me to finish the thought. We think that that judgment has to be vacated in its entirety because everything that flowed from that, including page 2, including the trial decision, including the adjudication on attorney's fees, was sort of a cascade of errors that flowed from the error initially committed in December of 2017. So, yes, in answer to your question, I think we have to vacate the judgment, and then we would really start anew on the issue of liability where –  So I guess that's what I'm asking. So the district court would then decide whether there are disputed issues of material fact with respect to confusion, considering – I think we'd have to retry – we'd have to sort of, I guess, relitigate the issue of likelihood of confusion. In this case, the only way that I could imagine plaintiff being successful is it would have to invoke, you know, the common Polaroid factors in an effort to make its case. It didn't do that below. It simply relied on issue preclusion as a vehicle – No, I understand that. So you're – I mean, so it's not an automatic trial. I mean, it could be something that would be disposed of in summary judgment. That's right. That's right. But you'd have to require a much broader analysis. That's right. All right. That's right. All right. Will you reserve two minutes for rebuttal? We'll now hear from Ms. Healy. Thank you. On behalf of Cesati. How do I pronounce it? Your Honor, perfectly. Perfectly. Yes. I eat a lot of Italian food, and Judge Bianco corrects me whenever. Yes, and I'm originally Italian, so I may not pronounce all the English words correctly, but may it please the Court, Valeria Calafiora Healy for appellee cross-appellant Cesari. I'd like first to address a brief housekeeping matter, and then I'd like to answer Your Honor's questions about Jim Beam. As a first housekeeping matter, I just wanted to bring to the Court's attention a case that was decided last November called the Foxmark. Unfortunately, it took my computer, so I'll try to remember the citation, 160F428, decided November 2025, which directly overrules a case that was relied on by opposing counsel in response to cross-issue number two on the proportionality of fees to the damages award, or in this case, a discouragement award. Now, turning to what I hear is the main issue, which was raised in reply, Jim Beam, the origin in this case, in this circuit anyways, as to TTAB preclusion, and I think it's really important to step back for a second and recognize that this is a case about preclusion law, not trademark law. And Jim Beam analyzed preclusion, agency preclusion. At that time, it was early in the 1990s, 1991, I believe, and agency preclusion wasn't that developed. And if Your Honors look at the Court's decision, the main holding and how Jim Beam starts is by looking at is the issue identical? And the issue identical, as B&B later says, has a dimension, and Jim Beam relied on a case, which I believe is Cullen v. Margiotta, which was a class action, Rule 23 case, in which this Court had analyzed whether the issue is the same by comparing the legal standard. And in that particular case, it was the — if the board does not consider the marketplace usage of the party's marks, the board's decision should have no weight or conclusive effect in a suit where actual usage in the marketplace is a paramount issue. That's the law. Absolutely. And Justice Ginsburg, in her concurrence, emphasized that point again. So why isn't that a problem here? I think it's clear. I don't think you would disagree that the board did not look at evidence of market usage. It relied on the registration and the application and said they're both whines and ended the analysis there. Right? Your Honor, I think there's two different meanings of usage, and I'm going to set aside Justice Ginsburg because the meaning that Justice Ginsburg gives is completely different than what the Solicitor General submitted to B&B and what B&B accepted. The way B&B uses the word usage, and it's set forth at the beginning of the decision, usage is defined as a mark affixed on goods. And then in that part of the section, section 4a, I believe, of the decision, the Supreme Court is analyzing the distinction between the applied-for mark and common-law marks. And that's exactly, if Your Honor reads that part of the decision, B&B is distinguishing that was an objection raised by Hargis in connection with the legal standard. If the Court would allow me a moment to finish the issue about Jim Beam, because I think you will provide the Court the full architecture of how B&B is analyzing issue preclusion. And I will get back and answer this question. I would like for a moment, because I think it's important to understand what the Court is doing. So in Jim Beam, the Court is looking at the legal standard. It's saying, here the legal standard is not the same. The legal standard is the way the Courts analyze issue, the likelihood of confusion. That was the legal standard. And Jim Beam, after saying, this is two different legal standards, relies on three factors. The evidence that was being used, and uses McCarthy to say, you have to look at the evidence that's used by the two different tribunals. The way the tribunals were interpreting the evidence, and it's also relying on the fact that it's two different processes. One is registration-wise, and one is infringement. Relying on these three factors, Jim Beam concludes the legal standard is not the same. Levi, a few years later, picks up and just simply applies Jim Beam and says the legal standard is not the same, and these are the three reasons. Two different proceedings, repeats the same. In the Eighth Circuit decision in B&B Hardware, if Your Honors go back to that decision, the decision leads exactly with Jim Beam and the quote from McCarthy that talks about the legal standard and uses these factors, the way the Courts were interpreting the Polaroid factor in the TTABs versus in the district court. It uses the evidence. It uses the purpose. Again, it uses this concept to go back to the conclusion that the legal standard is not the same. What B&B did was restore the architecture of preclusion law under Section 27 and 28 of the Restatement Seconds of Judgment, which have governed preclusion law forever since they were in draft form, and, in fact, they were mentioned in Montana, which the B&B picks up again. So now, Your Honor, I'm going back to your question. So B&B picks up 27, which provides a general rule for preclusion law, and 28, which has the exceptions to preclusion law. One second, Your Honor. Sorry. Thank you, Your Honor. So in B&B, the Court leads the decision by saying preclusion law, and, in fact, it goes over a center of preclusion law jurisprudence to show that preclusion law was only expanding, not narrowing. Then it takes the first objection, actually the only objection that the Eighth Circuit had, which relied on Jim Beam, and looked at that Section 4A, 4 and 4A, that's really the heart of it. It talks about, again, looking at using Section 27 as guidance. It is true that if the legal standard applied by two different tribunals is not the same, then the issue will not be the same. I think the argument is that the issue is not the same here. They're not looking at the same thing for confusion. What the Board is doing is different than what the District Court would have been doing or should have been doing in an infringement action. And that's exactly what B&B answered. B&B said, no, here we have a single federal standard that's interpreted by different tribunals differently. But the problem is that this was summary and there was no opportunity for a full and fair opportunity to litigate it. Justice Alito is quite specific with regard to the fact that there was a full and fair opportunity in B&B, that there was discovery, there was evidence taken under oath, there was all kinds of procedural safeguards that allowed for a full and fair opportunity. This is a summary proceeding with no notice, no notice to the one side of which the summary proceeding is going to be invoked. Sure, Your Honor. Let me address that. B&B looked at... Do you agree with me that one of the elements of a longstanding standard with regard to issue preclusion is a full and fair opportunity to litigate? Your Honor, I agree... Do you agree with me on that? Absolutely. And let me answer what... And was that done here? Yes, Your Honor. It was? Let me answer using different... Did you agree to depose anyone from your facility, from your client's place, with regard to where the wines are sold, what evidence there was with regard to consumer confusion with regard to the sale of... Your Honor... Let me finish. Yes. Let me finish. Absolutely. Was there any evidence with regard to consumer confusion with regard to the two brands? Your Honor is looking at... Just answer my question. Yes, actually... Was there any evidence of consumer confusion? Actually, the identical label was submitted, and it's in the record, with the opposition and the answer that Peugeot filed. But, Your Honor, let me go back to the architecture, because I already answered these questions in my brief. I would like, Your Honors, to really focus on the architectural preclusion. To answer the question about fairness, B&B... I'm focusing on the architecture. Yes, and Your Honor... That's why I asked you the question... Yes, and I'd like to point you to what B&B decided, because I'm not the law, and Your Honors may disagree. But B&B pointed to Section 28. There's two... The sentence, extensive... The quality, extensiveness, and fairness of the procedure is not just a sentence that people give whatever meaning they want to. It comes straight out of Section 28 of the Restatement Seconds of Judgment. In fact, it maps to exception number three that talks about the quality and extensiveness. And B&B said that's a categorical exception. And it's B&B that compares the procedures in the two tribunals and find as a matter of a categorical exception that the procedures are fine. What B&B leaves open the door for the specific case is the question of fairness, which is addressed in the Restatement Seconds of Judgment 28, exception number 5C, which is recalled in B&B. And that exception, which is very crucial, addressed in B&B's architecture. It says the standard is the same. You cannot look. It's like saying you go to a doctor, and the doctor has to do a diagnosis and uses different tools. B&B says you don't compare the tools. The issue is the actual diagnosis. You keep overlooking the fact that the key part of the decision is that if there's no – if they're not allowed to put on evidence of market usage, there's no preclusive effect. Your Honor, the court... Yes, but, Your Honor, you can't read that sentence in the observation. The court never talked about evidence. So it's your position that if they look at the registration and the application, they say they're both wines, therefore we're going to allow the registration to go forward, that they can never litigate in the future that there's all these distinctions in terms of the market, geographic, the labels.  They're done. Your Honor, that was Jim Beam, and Jim Beam used... Your position is they can never litigate those again. If the issue – the issue that's the same here is Liana for wine likely to cause confusion with Liana for wine. That is the issue. The issue is not the Polaroid factors or the DuPont factor, and that's exactly what B&B answered. B&B said you have to look at the issue. Your Honor, there's many multi-factors tests. We are governing the law by multi-factor tests. There's not a single decision that looks at issue preclusion based on looking at the multi-factor test. And in fact, Your Honor, Judge Learned Hand back in the 1940s had this seminal decision about ultimate fact and mediate fact, which were really the evidentiary facts. And that's addressed in the Restatement Seconds of Judgment also, Section 27. What B&B leaves open is the possibility you can look at the issue. The issue is the mark on the goods. If in an infringement action, that's – Your Honor answers the question of the paragraph Your Honor is looking at. And I invite the Court to read the full section. The Court is specifically distinguishing disclosed usages versus nondisclosed, and it calls them, the nondisclosed, the common law usages. That's an example. It's not the only way that – it can't be that if the label is not used on wine, she's on a bicycle. That's the only thing that you consider. Your Honor, the mark – the issue is the mark. Is the mark like – this is a word mark. This is not – There's a lot of issues. There's issues of the geography of the market. There's an issue of how the mark is used in conjunction with other labels. There's a lot of issues besides whether or not it's a nondisclosed use. That's just one example. Your Honor, these are – it's one step below the issue. And there's no court decision that looks at the test use. And here, the only way you look at the test – and actually, in BMB, they cite Smith v. Bayer, which is another class action, Section 23 case. And there, the test looked the same, was exactly the same, but it was two different sovereigns with two different interpretations. And the Court in that case said, no, it's not the same. But here, the Court concluded it's one single federal standard. And you can't have – you can't stop issue of collusion just by arguing that different tribunals are looking at different evidence, looking at different way of weighing the evidence. That's what Jim Beam used to decide this legal standard was different. All right. Thank you. So we've gone way over, but – Oh, sorry. No, that's all right. We have your point.  So we'll now hear from Mr. McMullin for two minutes. No, thank you. You bet. Thanks. Mr. McMullin. Thank you, Your Honor. Just a few brief points. The issues were not identical. Under this Court's jurisprudence in Cayuga Nation, for example, two of the four – one of the four issues is, is that the issues were actually litigated. As we argue in our briefing, and as does the International Trademark Association, the Board's opinion was decided on presumptions. Issues were not actually litigated. It was presumptions. The other issue I want to address is in – and page, I think it's 24 and 25 of Cesari's briefing, and it was also just uttered by my colleague a moment ago. The argument is made that undisclosed usages necessarily means common law use. That's just not true. B&B Hardware, in the citation to the government's brief, B&B Hardware talks about instances in which there would be material differences, and it talks about specifically differences in the marks. The government's brief talks about T-shirts and watches, the point being that if the goods are different, there also can't be preclusive effect. But it simply does not mean common law usage, and the citation in the briefing that my adversary points to just doesn't support the proposition. Finally, the suggestion that the answer, which contained a copy of what the Peugeot-Lyana label looked like in 2004, was not part of the record in the Board's decision. Ironically enough, though, it was a motion for judgment on the pleadings. The answer was not among those documents that were considered. If you look at the opinion, and I believe, Judge Bianco, you read it, it's very clear the only two documents that were relied on were the registration certificate and the application for registration. In the absence of any questions by Your Honors, I'll sit down. All right. Thank you both. We will reserve decision. Thank you, Your Honors. Thank you.